IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHESTER SHANE MCVAY, | § | |
| | § | |
| MOVANT, | § | |
| | § | |
| v. | § | CASE NO. 3-07CV1101-M |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC., | § | |
| | § | |
| RESPONDENT. | § | |

## APPENDIX TO HES' OPPOSITION TO MCVAY'S
## MOTION TO VACATE ARBITRATION AWARD
### and
## CROSS-MOTION TO CONFIRM THE AWARD AND BRIEF

| APPENDIX | DESCRIPTION | PAGES |
|---|---|---|
| 1 | Notice of Appointment | HESAPP 01-09 |
| 2 | Claimant's Reply Brief Motion for Summary Determination | HESAPP 10-31 |
| 3 | Comparison Table of Award Language | HESAPP 32 |
| 4 | McVay's Response to Claimant's Post-Hearing Brief | HESAPP 33-35 |

Respectfully submitted,

John F. Booth, Texas Bar No. 00265000
David L. Joers, Texas Bar No. 10669800
Peter Schroeder; Texas Bar No. 00794606

**CRUTSINGER & BOOTH, LLC**
1601 Elm Street, Suite 1950
Dallas, Texas 75201-4744
(214) 220-0444 Telephone;
(214) 220-0445 Facsimile

And

Jeffrey W. Hellberg, Jr., Texas Bar No. 00796738

**JEFFREY W. HELLBERG, JR., P.C.**
1950 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 720-1010 Telephone,
(214) 720-1018 Facsimile

**ATTORNEYS FOR HALLIBURTON
ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been served upon Movant on the ___10th___ day of ___July___, 2007.

Peter V. Schroeder

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Central Case Management Center*

13455 Noel Road - Suite 1750, Dallas, TX 75240

internet: http://www.adr.org/

March 21, 2006

**VIA TELECOPY ONLY**

John Booth, Esq.
Crutsinger & Booth
1601 Elm Street
Suite 1950
Dallas, TX 75201

Gregory M. Clift, Esq.
Clouse Dunn Hirsch LLP
5200 Renaissance Tower
1201 Elm Street
Dallas, TX 75201-2162

Re: 71 480 00074 06
    Halliburton Energy Services, Inc.
    VS
    Chester Shane McVay
    - Dallas, Texas

Dear Gentlemen:

This will advise the parties that the Association has appointed Karen K. Fitzgerald to serve as arbitrator in the above-captioned matter. Ms. Fitzgerald has made the enclosed disclosure(s).

We have also enclosed a copy of the Notice of Appointment and the Notice of Compensation Arrangements for your file.

Please advise the Association of any objections to the appointment of Ms. Fitzgerald within ten (10) days, copying the other side.. The arbitrator shall not be copied on any comments related to the disclosure.

If any objections are raised, the other party may respond within ten (10) days. The AAA will make a determination regarding the arbitrator's continued service, in accordance with the Rules.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

*Stacey L. Coe*

Stacey L. Coe
Case Manager
800 804 8865
Coes@adr.org

*Supervisor Information: Geno D. Galantay, 972 702 8222, Galantayg@adr.org*

SLC
Encl.

cc:    Karen K. Fitzgerald, Esq. w/encl. **VIA TELECOPY ONLY**
       William Bedman, Esq. **VIA TELECOPY ONLY**
       Janet Hill **VIA TELECOPY ONLYU**

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 71 480 00074 06
Halliburton Energy Services, Inc.
VS
Chester Shane McVay
- Dallas, Texas

## NOTICE OF APPOINTMENT

To:  Karen K. Fitzgerald, Esq.

It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☑ | ☐ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☑ |

HESAPP-03

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? ☐ ☑

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? ☐ ☑

11. Have you ever sued or been sued by either party or its representative? ☐ ☑

12. Do you or your spouse own stock in any of the companies involved in this arbitration? ☐ ☑

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? ☐ ☑

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? ☐ ☑

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

Please indicate one of the following:

☐ I have conducted a check for conflicts and have nothing to disclose.

☑ I have conducted a check for conflicts and have made disclosures on an attached sheet.

## THE ARBITRATOR'S OATH

State of Texas

County of Dallas ⎬ SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: 3|18|06          Signed: Karen K Fitzgerald

Sworn before me this _____ day of _____ , 20

AAA No. 71 480 00074 06

**Halliburton Energy Services, Inc. v. Chester Shane McVay**

**Arbitrator Disclosures**

I have reviewed the materials provided by the AAA and make the following disclosures in regard to the above referenced matter.

1.    I am familiar with several of the attorneys who work for the law firm of Clouse Dunn & Hirsh P.C.

2.    In 2000 and 2001, I was co-counsel in a case with Keith Clouse and Alyson Brown, both of whom now work for Clouse, Dunn & Hirsh P.C. The case was an overtime lawsuit and it was resolved in 2001. Keith Clouse and Alyson Brown both worked for the law firm of Lawson & Fields at the time we worked together. I have not been co-counsel in any cases with Keith Clouse or Alyson Brown since 2001. I do maintain a professional relationship with Keith Clouse and Alyson Brown and have referred ERISA or overtime cases to them on an occasional  basis. I believe I referred a potential overtime case to them in 2005, but I do not think they ended up taking the case. I also referred an ERISA case to them within the past three months, but I do not know if they took the case or not. When I refer cases, I do not seek a referral fee, so I have no professional relationship with the firm on that basis. I also have lunch with Alyson Brown on a very occasional basis (every nine months to a year or so).

3.    I also know two other attorneys at Clouse, Dunn & Hirsh. I know Ladd Hirsh on a social basis and have lunch with him on a very occasional basis (approximately once a year or so).

4.    I worked at the law firm of Vial, Hamilton, Koch & Knox, LLP from 1989 to 2000. During a part of the time I was at VHKK, Steve Kardell was a partner at VHKK. It is my understanding that Steve Kardell is currently working at Clouse Dunn & Hirsh. I have not seen Steve Kardell in many years and do not currently have a professional or personal relationship with Steve Kardell.

5.    I have never met either Greg Clift or Rogge Dunn at the law firm of Clouse Dunn & Hirsch LLP.

MMMar. 21. 2006 10:05AM   AMERICAN ARBITRATION   (FAX)2147504296No. 2023   P. 7/10/008
2147504296

I do not believe that the foregoing disclosures would prohibit me from serving as a fair and impartial arbitrator in this matter.

Date: 3/20/06

Karen K. Fitzgerald

# AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

Re: 71 480 00074 06

Halliburton Energy Services, Inc.
VS
Chester Shane McVay
- Dallas, Texas

## Notice of Compensation Arrangements

To:  Karen K. Fitzgerald, Esq.

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals*, which are enclosed. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association *prior to accepting your appointment* so that the parties can determine whether they still seek your services as an arbitrator.

### Your Compensation

This matter is being administered under the National Rules for the Resolution of Employment Disputes. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

| | |
|---|---|
| Hearing Time: | $215 per hour |
| Study Time: | $215 per hour |
| Cancellation: | Charges a $500 cancellation fee for cancellations within 14 days of scheduled arbitration. |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### Your Expenses

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

## Deposits and Payment

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings*. Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager *prior to exhausting the current deposit*. The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

## Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

Mar. 21. 2006 10:06AM   AMERICAN ARBITRATION
MAR. 17. 2006  4:56PM                                    (FAX)2147504296  No. 2023   P. 10/10 008
                           214750429C                             NO. 947   P. 7

## ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payer's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _Karen K Fitzgerald_          Date: _3/18/06_

RECEIVED TIME  MAR. 20.   9:42AM          PRINT TIME  MAR. 20.   9:44AM
                                           03/21/06  TUE 10:08  [TX/RX NO 6872]

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

Central Case Management Center
Molly Bargenquest
Vice President
Tracey Patten
Assistant Vice President

13455 Noel Road - Suite 1750, Dallas, TX 75240
telephone: 972-702-8222 facsimile: 972-490-9008
internet: http://www.adr.org/

November 17, 2006

**VIA EMAIL ONLY**

John Booth, Esq.
Crutsinger & Booth
1601 Elm Street
Suite 1950
Dallas, TX 75201

Gregory M. Clift, Esq.
Clouse Dunn Khoshbin LLP
5200 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

Re: 71 480 00074 06
    Halliburton Energy Services, Inc.
    VS
    Chester Shane McVay
    - Dallas, Texas

Dear Gentlemen:

This will acknowledge receipt of Claimant's Reply Brief Motion for Summary Determination dated November 16, 2006, from Mr. Booth, a copy of which we note was sent to Mr. Clift.

By copy of this letter the Association is transmitting the above to the Arbitrator for consideration, along with the previously submitted Motion and Response.

Sincerely,

*Stacey L. Coe*

Stacey L. Coe
Case Manager
800 804 8865
Coes@adr.org

*Supervisor Information: Geno D. Galantay, 972 702 8222, Galantayg@adr.org*

SLC

cc:    Karen K. Fitzgerald, Esq. w/encl. **VIA EMAIL ONLY**
       Jeffrey W. Hellberg, Jr., Esq. **VIA EMAIL ONLY**
       William Bedman, Esq. **VIA EMAIL ONLY**
       Lawrence Jagneaux **VIA EMAIL ONLY**

# IN THE MATTER OF ARBITRATION BETWEEN

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | § § § | |
| vs. | § § | NO. 710480 00074 06 |
| CHESTER MCVAY | § § | |

## CLAIMANT'S REPLY BRIEF
## MOTION FOR SUMMARY DETERMINATION

Claimant Halliburton Energy Services, Inc. ("HES") files this Reply to Respondent's Response to Claimant's Motion for Summary Determination.

## REPLY

**A.    Malicious Prosecution; Damages; "Summary Determination"**

1.     McVay correctly points out (Response, p. 1) that HES' Motion did not address McVay's malicious civil prosecution counterclaim; however, this claim fails to state a cause of action.  A cause of action for malicious prosecution does not accrue until the prosecution or suit complained of has ended in favor of the defendant.  *Delaporte v. Preston Square, Inc.*, 680 S.W.2d 561, 564 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). *See Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207-08 (Tex. 1996) (listing elements of malicious prosecution claim).

2.     HES' Motion also did not address damages; however, HES does intend to seek damages, along with its attorney's fees and costs in subsequent proceedings before the AAA.  (HES' Motion (p. 2) inadvertently stated that the motion "seeks to dispose of all disputes ... with the exception of determining HES' recoverable amount of attorney's fees ...").

---

**CLAIMANT'S REPLY BRIEF MOTION FOR SUMMARY DETERMINATION**                    **Page 1**

3.    To clarify, the arbitrator may determine credibility or resolve disputed fact issues in ruling on HES' Motion, since the criteria for obtaining summary judgment is inapplicable to arbitration. *See Grindle v. Graziano*, 62 Mass.App.Ct. 1118, 820 N.E.2d 837 (Mass.App.Ct.) (unpublished opinion) (summary disposition was proper; attempt to inject summary judgment principles into an arbitration proceeding "fundamentally misunderstands the nature of arbitration and the limited review afforded such proceedings"; it was irrelevant that the arbitrator's summary disposition ruling may have determined credibility or resolved disputed issues of fact); *Pegasus Construction Corp. v. Turner Construction Co.*, 84 Wash.App.744, 929 P.2d 1200 (1997) (similar; arbitrator's decision was not a "summary judgment" and a full evidentiary hearing was not required; rather, arbitrator's resolution was permitted by governing statute and arbitration rules and consistent with state's strong policy favoring arbitration as quick, certain, and inexpensive alternative to litigation).

**B.    Response to McVay's "Background" Statement**

4.    In an attempt to avoid the provisions of the Intellectual Property Agreement (IPA) (HES1003-4) requiring return of HES documents on the termination of his employment, McVay argues (Response, p. 2) that his January 3, 2006 resignation was effective January 15, 2006. HES' policy prohibiting an individual from remaining an employee after their last day at the office was explained to McVay. (Ex. H, Stanaway Depo., 47:22-49:1). McVay decided not to return on January 15 and elected to be officially terminated on January 4, 2006 (EX. A, Personnel Action Notice, HES40358), and he was paid for his three weeks of unused vacation.[1]

---

[1] By remaining an employee of HES for one day in calendar year of 2006, Mcvay took advantage of an HES employment policy that qualified him for three weeks vacation. McVay's taking unfair advantage of

5.      McVay asserts that after his exit interview it was "unclear to McVay what was expected" of him. (Response, p. 2). During the January 3, 2006 exit interview, McVay's IPA was read to him. McVay was requested to return documents required under the IPA to his supervisor on his last day in the office, January 4, 2006. McVay refused to acknowledge his obligations under the IPA. McVay informed the attendees that his attorney had advised that McVay had an ownership interest in some HES product-related engineering documents. (Ex. G, Imwalle Depo., 34:23-36:6). McVay would not disclose the identity of his attorney. McVay was invited to call his attorney, and when he didn't, he was requested to bring his attorney in person or by phone to a meeting the next day (January 4, 2006, his last day in the office). (Ex. H, Stanaway Depo., 47:7-47:13). Later, McVay denied that he had met with an attorney. (Ex. B, 09/15 McVay Depo., 39:12-15). McVay now disingenuously claims HES denied him "an opportunity to speak with his legal counsel." (Response, p. 3).

6.      In an attempt to excuse his failure to return HES' documents, McVay now argues (Response, p. 2) that he needed an opportunity to meet with his counsel to discuss his duties under the IPA, and that it is HES' fault (Response, p. 3) that he had no such opportunity before being served with the TRO on January 5, 2006.

7.      Any "time crisis" was created by McVay by giving one day's notice. Back in the summer of 2005, McVay had decided to leave HES and began seeking employment in the Oil and Gas Industry. (Ex. C, 10/28 McVay Depo., 77:3-78:2). On November 18, 2005, McVay notified Caterpillar that he accepted their offer of employment. (Ex. D, 10/28 McVay Depo., 82:5-9). McVay agreed to report at Caterpillar on January 9, 2006.

---

this HES policy undoubtedly caused him to delay giving notice until January 3, one day before his departure.

(Ex. E, 10/28 McVay Depo., 83:1-6).  Thus, from at least November 18, 2005, McVay knew he would be terminating his employment with HES before his January 9th 2006 start date at Caterpillar.[2]  McVay had ample opportunity during that one and a half month period to consult with his counsel about his contractual obligation to return HES' engineering documents.

8.      Second, McVay had ample opportunity to consult with an attorney during the last six months of 2005 while he was secretly transferring copies of HES' engineering documents to his home computer.  As previously described, McVay in anticipation of leaving HES, began secretly transferring enormous amounts of HES engineering materials from HES to his home computer.  He also made paper copies of HES engineering documents and emails.  (Ezell Aff., attached to HES' original Motion). Finally, on December 30, 2005 (three days before he resigned on January 3, 2005), McVay copied from his office computer 650 megabytes of data, and on January 1, 2006 saved it to his home computer.  (Newman Expert Report previously filed November 1, 2006)  This last transfer was too large to have been moved by email and would have required McVay to use a portable storage device.[3]  Indeed, McVay had ample opportunity to consult with counsel before and after each of his transfers of hundreds of HES engineering documents.  These documents can be viewed on a CD and DVD (Ezell's Aff., Ex. 2, Tabs A and B; attached to HES' original Motion).

---

[2] Despite knowing he would start a new job on January 9, 2006, on December 20, 2005, McVay requested using his 2006 vacation to stay on HES' payroll until January 15, 2006.
[3] McVay admitted he "may" have used other means besides YAHOO to transfer files home. (Ex. C, 10/28 McVay Depo. 16:2-15)  Note that the sheer size of this transfer (one of the two files transferred is over 650 megabytes) would require a transfer means other than email – McVay must have used a CD, DVD, or USB drive to transfer the files.  And yet, McVay failed to produce any such device to his counsel's office as directed by the TRO or to HES during discovery.  Where is the missing DVD containing thousands of HES documents?

---

**CLAIMANT'S REPLY BRIEF MOTION FOR SUMMARY DETERMINATION**                **Page 4**

9.      Third, at the exit interview on January 3, McVay represented that he had already consulted with counsel.  McVay informed the attendees that his attorney had advised that McVay had an ownership interest in some HES product related engineering documents. (Ex. G, Imwalle Depo., 34:23-36:6).  McVay has not disclosed the identity of any such attorney, and later (during his first deposition) denied consulting with counsel. (McVay Depo)

10.     Fourth, at the exit interview McVay was invited to call his attorney, and when he didn't, McVay was requested to bring his attorney in person or by phone to a meeting the next day on his last day in the office.  (Ex. H, Stanaway Depo., 47:7-47:13).  Instead, McVay refused.  He could have consulted with his attorney before the proposed HES meeting on January 4, 2006.

11.     Fifth, after the January 3rd meeting McVay did not even attempt to consult with an attorney; instead McVay went home, started packing, and was attempting to leave the state with HES' engineering technology when the TRO was served on him on January 5, 2006.

12.     Finally, McVay had ample opportunity to collect and return HES' documents on January 4th.  Indeed, he could have returned everything he had and then sorted out any ownership or other issues regarding such documents and materials at a later time.

13.     McVay launches an outrageous *ad hominem* ethical attack on Mr. Imwalle, HES' in-house counsel. (Response, p. 3).  Incredibly, McVay complains it was improper for Mr. Imwalle to request another meeting with McVay on January 4th because McVay had asserted at the meeting on January 3, 2006, that he was represented by counsel (although *the January 4th meeting never occurred*).  (Response, pp. 2-3).  This attack is in bad

faith because McVay fails to inform the arbitrator that McVay testified under oath that, *in fact, he had not consulted with counsel* before the January 3rd meeting with Mr. Imwalle (Ex. B, 09/15 McVay Depo., 38:6-39:20). Thus, McVay made false statements to Mr. Imwalle at the January 3rd meeting concerning being represented by counsel. Also, in response to McVay's statements that he was represented by counsel, Mr. Imwalle *told McVay to have his alleged counsel attend* in person or by phone. (Ex. G, Imwalle Depo., 38:10-19; Ex. H, Stanaway Depo., 47:7-47:21). McVay had a duty to cooperate and Mr. Imwalle did nothing improper. *See* Brian & McNeil, *Internal Corporate Investigations* 170-71 (2d ed. 2003) (a duty to cooperate exists in every employer/employee relationship; an employee is obligated to comply with an internal investigation addressing matters within the scope of employment duties).

## C.   McVay's Breach of Contract; Breach Caused Injury

14.   At page 5 of the Response, McVay abandons his previous claim that he was merely "backing up" files for HES at home, and offers an equally absurd excuse that the HES files were at his home so McVay could perform work for HES. However, McVay's latest excuse is rendered ridiculous by the fact that McVay transferred an enormous number of documents home over the days and weeks preceding his resignation. Indeed, two days before McVay resigned, McVay transferred 650 MB of HES documents to his home computer, belying any contention that he intended to "return" the documents. *See LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 849 A.2d 451, 466-67 (2004) (evidence established employee's misappropriation of trade secrets by improper means: "LeJeune did not merely hold on to documents that had been sent to his home and then refuse to return them ... Rather, on the last day of his employment, LeJeune selected specific,

---

confidential Coinco documents and actively transferred them from the Coinco laptop to a CD that he intended to keep for his personal use."); *Ackerman v. Kimball International, Inc.*, 652 N.E.2d 507, 510-11 (Ind. 1995) (upholding the trial court's finding that the defendant's pre-departure "harvesting" of the plaintiff's proprietary information suggested a threat of misappropriation).

15.     McVay quotes HES' counsel and points out that McVay could have simply complied with the IPA by returning the materials and deleting the materials from his home computer. (Response, pp. 5-6). But, McVay did not do this; instead McVay attempted to leave the state with HES' documents and returned nothing on January 4, 2006 as requested on his termination date.

16.     McVay contends that HES is unable to establish injury, and specific performance is unavailable, allegedly because "McVay has already provided each item to Claimant" (Response, pp. 3-4, 13). This argument ignores the law and is without merit. (HES also disputes the truth of McVay's factual assertions). *See Fremont Oil Co. v. Marathon Oil Co.*, 192 N.E.2d 123 (Ohio Com.Pl. 1963) (former employees' and new employer's return of former employer's confidential route lists in open court did not "cleanse" former employees and new employer of wrongdoing growing out of taking of the route lists before employees changed employment).

17.     In an action for breach of contract, actual damages may be recovered when the loss is the natural, probable, and foreseeable consequence of defendant's conduct. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981). A plaintiff may also recover for reasonable and necessary expenses incurred in mitigating his damages. *See Hycel, Inc. v. Wittstruck*, 690 S.W.2d 914, 924 (Tex.App.—Waco 1985, writ dism'd). Mere

proof of the making and breach of a contract fully prove a plaintiff's cause of action for which he is entitled to recover at least nominal damages, regardless of whether actual damages are proved. *Hauglum v. Durst*, 769 S.W.2d 646, 651 (Tex.App.—Corpus Christi 1989, no writ) (oil company owner that established making of contract with oil consultant and breach of that contract by consultant was entitled to nominal damages and attorney fees). Indeed, one may enjoin the threatened breach of contract without showing that he has been injured at all. *Moore v. Duggan Abstract Co.*, 154 S.W.2d 519, 521 (Tex.Civ.App.—Fort Worth 1941, writ ref'd w.o.m.).

18.     A breach of contract entitles the non-breaching party to recover an amount of money as compensation for the expense of retaining an attorney in the litigation. *West v. Brenntag Southwest, Inc.*, 168 S.W.3d 327, 338 (Tex.App.—Texarkana 2005, pet. denied) (award of reasonable attorney's fees to plaintiff recovering on valid breach of contract claim is mandatory under Texas law). A "valid claim" for this purpose is not limited to one for monetary damages and may include a claim for specific performance. *Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 286-87 (Tex.App.—Houston [14th Dist.] 2003, pet. denied) (no money damages recovered besides attorney's fees); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 796-97 (Tex.App.—Houston [1st Dist.] 2001, no pet.) (money damages not available). *See also RenewData Corp. v. Strickler*, 2006 WL 504998 at *16-17 (Tex.App.—Austin, March 3, 2006, no pet. h.) (no money damages awarded).

**D.     Records in Respondent's Counsel's Office**

19.     McVay argues he is not "in breach" of the IPA allegedly because he "returned" HES' documents after the instant action was underway, and the documents are in his

---

counsel's possession "by agreement and court order" for the course of the litigation. (Response, p. 7). McVay ignores that he did not follow the IPA, Exhibit 1, HES1003-4 which assigned ownership of documents to HES and required McVay to return, "on the termination of his employment or at any other time upon request," all records, drawings, and other documents concerning HES' processes, products and other HES activity which were made or compiled by McVay, or made available to McVay while employed at HES. The terms of the IPA required McVay to return HES' documents on January 4, 2006 (when requested and upon termination). It is undisputed that McVay did not return HES' documents as was required under the terms of his IPA. Through discovery in the Dallas lawsuit, HES learned that McVay had not returned all the HES property in his possession on January 4, as requested, including boxes of records and engineering files and hundreds of megabytes of electronic records. McVay would have absconded with the HES property were it not for the filing of suit on January 5th, the entering of a TRO and service upon him. Service was obtained while McVay was packing a truck, preparing to leave the state that evening of January 5, 2006.

20.    McVay's assertion (Response, p. 7) that HES "is in no position to claim McVay has refused to return items when it chose to have such maintained in custody for it by [McVay's counsel]" is without merit. *See Stanley Educational Methods, Inc. v. Becker C.P.A. Review Course, Inc.*, 536 F.2d 86, 91-92 (where acquiescence by supplier of course materials in continuation of course and its acceptance of payment could not be characterized as voluntary since such took place at time when, by mutual assent of parties, injunctive power of court was operating to preserve status quo, supplier did not waive breach of contract); *Lucini Italia Company v. Grappolini*, 288 F.3d 1035, 1038 (7th

Cir. 2002) (a request for an injunction, preliminary or otherwise, is not mooted simply because the parties have, for the course of the litigation and by their own agreement, maintained the status quo). (McVay's claim that the documents have been "returned" (even if true) does not "moot" the case. *See Myers v. City of Alcoa*, 752 F.2d 196, 197 n.1 (6th Cir. 1985) (restoration of electrical service did not moot an action challenging the initial summary termination of service; plaintiff sought an injunction against future summary terminations, and had asked for damages); 13A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3533.3, at 262 (2d ed. 1984) (a claim for damages avoids mootness). *See also Lakeview Technology, Inc. v. Robinson*, 446 F.3d 655, 656-57 (7th Cir. 2006) (former employee's pledge to not solicit former employer's customers or to disclose its trade secrets did not foreclose preliminary injunction, where employee had accepted position with competitor, employee had lied about his future plans, and employee's lawyer argued that employee was entitled to ignore his commitments under employment contract).

## E.   McVay's Affirmative Defenses

21.    McVay asserts unilateral mistake, unconscionability and ambiguity to avoid enforcement of the IPA. He argues the IPA provides "no time period" for the return of items, it is "impossible" to comply and a "reasonable time" should be provided. (Response, pp. 9-11). McVay's "defenses" are a sham, since even under his proffered interpretation, he breached the IPA.

22.    McVay's affirmative defenses are also legally deficient. A unilateral mistake may warrant the setting aside of a contract if the mistake was of so great a consequence as to make enforcement of the contract unconscionable, if it related to a material feature of the

contract, and if it was made regardless of the exercise of ordinary care. *Northern Nat'l Gas Co. v. Chisos Joint Venture I*, 142 S.W.3d 447, 456 (Tex.App.—El Paso 2004, no pet.). When mistake is asserted defensively, it is an affirmative defense which must be pleaded and proved by a party who seeks to rely on it. *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex.App.—Eastland 2003, pet. denied). Here, McVay provides no evidence of the required elements; his counsel's unsubstantiated and conclusory allegations and arguments are not sufficient to raise a triable issue. Further, McVay only complains of mistake as to the legal effect or interpretation of the IPA. A mistake of law is not grounds for avoiding a contract. *Herrmann v. Lindsey*, 136 S.W.3d 286, 292 (Tex.App.—San Antonio 2004, no pet.).

23.     McVay argues that the IPA is unconscionable in order to avoid enforcement of the agreement. Whether a contract is unconscionable is a question of law for the court to decide. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 816 (Tex.App.—Dallas 1999, no pet.). The term "unconscionable" does not have a precise legal definition, but in general it describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms. *Walton v. Hoover, Bax & Slovacek, L.L.P.*, 149 S.W.3d 834, 846 (Tex.App.—El Paso 2004, no pet.). The basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re FirstMerit Bank, N.A.*, 52 S.W.2d 749, 757 (Tex. 2001). An adhesion contract, i.e., a contract in which one party has absolutely no bargaining power or ability to change the contract terms, is not automatically unconscionable. *In re AdvancePCS*

---

*Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005).  The party seeking to avoid enforcement

of the contract must prove more than that the contract was offered on a take it or leave it

basis. *Serv. Corp. Int'l v. Lopez*, 162 S.W.3d 801, 809 (Tex.App.—Corpus Christi 2005,

no pet. h.).   The party asserting unconscionability must prove both procedural and

substantive unconscionability.  *Ski River Dev., Inc. v. McCallas*, 167 S.W.3d 121, 136

(Tex.App.—Waco 2005, pet. denied).

24.    McVay's bare contention that the IPA is a "take-it-or-leave-it" agreement and

"does not have legitimate commercial underpinnings" (Response, p. 11) does not render

the agreement unconscionable.  Further, the record fails to support a reasonable inference

that the commercial needs or commercial background of the parties gives rise to an

inference of oppression or unfair surprise.  It is common place and standard practice for

employees, when accepting employment with a company, to enter into agreements with

their employer that contain intellectual property and confidentiality provisions that

require the employee to return of proprietary documents and things to the company.  *See,*

*e.g., ViChip Corp. v. Lee*, 438 F.Supp.2d 1087 (N.D.Cal. 2006) (former CEO violated

confidentiality provision in employment agreement which required CEO to "promptly

deliver to [employer] all documents and materials of any nature pertaining to [his] work

with [employer]" and required him to "not take with [him] any documents or materials

containing any Proprietary Information," by removing information from employer's files

and deleting files from corporation's server and his company computer the night before

his termination and knowing that he was being asked to step down; CEO failed to return,

or due to destruction was not able to return, any of this information to the company until

litigation was underway); *Haught v. Louis Berkman LLC*, 417 F.Supp.2d 777, 783-84

(N.D.W.Va. 2006) (employee breached confidentiality agreement and misappropriated trade secrets by not returning confidential documents expeditiously upon her termination as required by agreement and requested by employer; agreements required the employee to return all confidential information upon termination); *Zahodnick v. International Business Machines Corp.*, 135 F.3d 911, 915 (4th Cir. 1997) (former employer was entitled to injunction where former employee had agreed not to disclose confidential information and to return all property when he left employment, but after being terminated, retained confidential materials and forwarded those documents to his counsel without former employer's consent; agreement required employee to return all IBM property to IBM when he left IBM's employment).

25.     McVay argues that the IPA is ambiguous in order to avoid enforcement of the agreement. The determination of whether a contract is ambiguous is a question of law. *General Agents Ins. Co. v. Arredondo*, 52 S.W.3d 762, 766 (Tex.App.—San Antonio 2001, pet. denied). If a contract is subject to more than one reasonable interpretation, the contract is ambiguous. *Id.* However, a contract is unambiguous if it can be given a definite or certain meaning, and conflicting interpretations of a contract, without more, do not create an ambiguity. *See id.* Here, McVay has not shown the necessary indefiniteness. The IPA is a standard agreement and is not ambiguous. *See ViChip Corp., supra; Haught, supra; Zahodnick, supra.*

F.      **McVay's Declaratory Judgment Claims**

26.     At pages 13-15 of the Response, McVay abandons his pleaded claim to determine ownership of the "standard industry software," and argues that his ownership claim now extends to the HES' "packer-specific software product" and "derivatives." HES objects

to McVay's surprise unpleaded change of position. However, subject to that objection,

HES points out that paragraph 5 of the IPA states any document or record made by

McVay while employed by HES that concerns any HES product shall be HES'

"property."

The relevant portion of the IPA provides:

> [T]hat all memoranda, notes, records, drawings, or other documents made or complied by him/her, or made available to him/her while employed by the Company [HES] concerning any process, apparatus, or product manufactured, used, developed, investigated, or considered by the Company, or concerning any other Company activity shall be the Company's property and shall be delivered to the Company on the termination of his/her employment or at any other time upon request. *Id.*, emphasis added.

27.     Further, McVay expressly assigned to HES under the IPA the "packer-specific

programs" which unquestionably relate to HES' business. *See, e.g.,* Lahti Expert Report

previously filed November 1, 2006, Ex. B, "Von Mises Calculator B" relating to HES

well-tool packers (screen prints attached hereto as Ex. I)[4]

28.     The IPA provides (in ¶ 1) that McVay "hereby agrees that he/she shall, as soon as

he/she has conceived, devised or invented, in whole or in part, and either solely or jointly,

with any other person or persons, any process, machine, manufacture or composition of

matter relating to business of [HES], or any improvement thereof, submit to the

Intellectual Property Department of the Company ... a full disclosure of such conception

or invention." The IPA also provides (¶ 2) that McVay "hereby agrees to assign, and for

no further consideration does assign, to the Company ... his/her entire right, title, and

interest in and to all inventions which relate to Company business ... [and] the

assignment ... is deemed effective upon conception of such invention." *Id.*, emphasis

---

[4] Note that the "Properties " of this document identify Gary Ellis (McVay's supervisor at HES) as the author, and indicate that this document was created on September 7, 1998 on Mr. Ellis' home ("Ellis family") computer, over two years before McVay commenced employment at HES.

added. *See Brown v. Alcatel USA, Inc.*, 2004 WL 1434521 (Tex.App.—Dallas 2004, pet. denied) (unpublished) (method for converting low-level computer code into high-level code constituted an "invention," within meaning of employment contract providing that employer would own inventions developed by employee that related to employer's business); *Goldwasser v. Smith Corona Corp.*, 817 F. Supp. 263 (D. Conn. 1993) (former employee breached confidential information and invention agreement by failing to assign to employer ideas embodied in computer software patent which employee received and by failing to execute assignment of patent upon employer's demand).

29.    HES has pointed out that McVay's request for "a declaration as to what, if any, confidential information is possessed by Claimant" (Response, p. 14) fails to present a justiciable controversy and should be denied, as it concerns only "hypothetical or contingent situations," or questions not essential to the decision of the instant case. *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex.App.—Austin 2002, pet. denied). In the Response, McVay asserts only that he "has been unable to take any actions with respect to the program," and that the requested declaration "is necessary so McVay is able to be fully educated" as to what items are "confidential" and subject to the IPA. (Response, pp. 14-15). The Declaratory Judgments Act does not empower a court to render an advisory opinion or rule on a hypothetical fact situation. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004). McVay's return obligations under the IPA are not dependent on confidentiality.

**G.    Authority for Relief Sought**

30.    McVay complains (Response, p. 15) that "no authority" exists for requiring a sworn statement from McVay regarding various issues, *e.g.*, certifying all items have

been returned, etc.   However, courts have broad discretion to formulate injunctions requiring the defendant to take affirmative steps to insure against future wrongdoing or to cure past misconduct.  *Restatement (Third) of Unfair Competition* § 35 cmt. g (1995). *See, e.g., Atlas Box and Crating Co., Inc. v. Valerus*, 2005 WL 3721353 (Mass.Super. 2005) (defendants were ordered to return confidential materials and to identify those to whom such information was disclosed); *Wyeth v. Natural Biologics, Inc.*, 2003 WL 22282371 (D. Minn. 2003) (defendant ordered to identify each person to whom it provided documents, etc., and to certify to the court in writing, under oath, that it complied with the court's order).  Compliance with an injunction may be monitored by requiring defendant to supply a report of compliance.  *See id.*; *American Automobile Ass'n v. AAA Ins. Agency*, 777 F. Supp. 393 (W.D. Tex. 1985) (AAA mark protected with report of compliance with injunction); *Aqua Grill, Inc. v. S.T.F.B. Corp.*, 1997 WL 563305 (S.D.N.Y. 1997) (defendants were ordered to cease using the name "Aqua Grill" and to file with the court a report in writing, under oath, setting forth the manner and form of their compliance with the injunction); *Beloit Corp. v. J.M. Voith, GmbH*, 1993 WL 592530 (W.D. Wis. 1993) (defendants ordered to file, under oath, a written report of compliance with patent injunction).

**H.**     **Conclusion**

1.     HES prays that the Arbitrator:

     a.     Find McVay has breached the IPA;

     b.     Order that McVay (and those in concert with him) perform McVay's obligations to HES under the terms of the IPA, as requested herein;

c.  Order that McVay (and those acting in concert with him) return to HES through its attorneys, all paper and electronic copies of all documents and tangible things concerning HES' products and processes, including those currently being held and possessed by his counsel under the terms of the Agreed Order signed January 31, 2006, and including but not limited to the following:

    i.  the paper copies of HES documents, currently at his counsel's offices, including engineering drawings, HES emails, HES training materials, HES' customers' information, four (4) mini-CDs of information containing photographs of HES products and product parts;

    ii.  HES documents stored electronically on two (2) home computers (a Dell XPS and a Dell Dimension) including all versions of the "Performance Envelope Software" and related programs;

    iii.  HES emails and materials on his personal Yahoo! email account;

    iv.  HES documents delivered to the "hytech7" address;

    v.  HES documents delivered to anyone; and

    vi.  The hard drives from McVay's home computers and all electronic or other copies of files thereon.

d.  Order that McVay (and those acting in concert with him) return to HES through its attorneys, all paper and electronic copies of all documents and tangible things concerning HES' products and processes that were delivered by McVay to any third party, including to anyone with access to

---

**CLAIMANT'S REPLY BRIEF MOTION FOR SUMMARY DETERMINATION**                    **Page 17**

the "hytech7" address and any copies that were forwarded from the "hytech7" address to others;

e.   Order that McVay shall, within five (5) days of complying with the above Paragraph (c):

    i.   certify by sworn statement that he has complied with the Arbitrator's Order (and detailing efforts undertaken to comply);

    ii.   certify by sworn statement that neither he nor anyone with access to the "hytech7" address possess or control any electronic or electronic copies of the documents and things being held and possessed by his counsel under terms of the January 31, 2006, Agreed Order;

    iii.   certify by sworn statement that no electronic or other copies of any documents or things received at the "hytech7" address from McVay that concern HES' products or processes have been provided to any third party or that all such copies have been returned to HES;

    iv.   certify by sworn statement that he has not delivered to anyone outside of HES, other than those with access to the "hytech7" address, any paper or electronic copies of any version of any documents or records relating to HES' products or processes, including those being held and possessed by his counsel under terms of the January 31, 2006, Agreed Order and those sent to the "hytech7" address; and

  v.  shall provide, at his own expense, a signed verification by an independent third party that all HES materials have been deleted and removed from his two (2) home computers and the computers of those with access to the "hytech7" address.

f. Enjoin McVay from accepting or commencing direct or indirect employment in the oil and gas industry or with any competitor of HES so as to prevent his disclosure or use of HES' trade secrets and confidential information;

g. Find against McVay's Counterclaims;

h. Order other equitable relief as deemed appropriate;

i. Award HES damages and reasonable attorney's fees in amount to be determined; and

j. Request the Texas District Court to enter these findings and enter injunctions compelling compliance therewith.

---

**CLAIMANT'S REPLY BRIEF MOTION FOR SUMMARY DETERMINATION**  **Page 19**

Respectfully submitted,

*David L. Joers*

John F. Booth, Texas Bar No. 00265000
David L. Joers, Texas Bar No. 10669800
Peter Schroeder, Texas Bar No. 00794606

**CRUTSINGER & BOOTH, LLC**
1601 Elm Street, Suite 1950
Dallas, Texas 75201-4744
(214) 220-0444 Telephone;
(214) 220-0445 Facsimile

And
Jeffrey W. Hellberg, Jr., Texas Bar No. 00796738
**JEFFREY W. HELLBERG, JR., P.C.**
1950 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 720-1010 Telephone,
(214) 720-1018 Facsimile

**Attorneys for Halliburton Energy
Services, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2006, a true and correct copy of the within document was caused to be served on the attorneys of record at the following addresses as indicated:

**BY FAX**

Gregory M. Clift, Esq.
CLOUSE, DUNN, & KHOSHBIN, L.L.P.
1201 Elm Street, Suite 5400
Dallas, Texas  75270
Facsimile:  214.220.3833

Attorneys for Respondent
Chester McVay

_David L. Joers_
David L. Joers

U:\mlm\CLIENTS\HALLIBURTON (HAL)\HAL 246\PLEADINGS\Drafts\reply brief redlined.doc

# Comparison Table of Award Language

| FINAL AWARD MCVAY APP 033-034 | CLAIMANT'S REPLY BRIEF – MOTION FOR SUMMARY DETERMINATION HES APP 27-28 |
|---|---|
| **V(1)(b)** | **H(1)(c)(v)** |
| McVay and those acting in concert with him are ordered to return within 10 days (to the extent not already returned) all paper and electronic copies of all documents and tangible things concerning HES products and services, including but not limited to any such paper or electronic copies delivered by McVay to any third party; | Order that McVay (and those acting in concert with him) return to HES through its attorneys, all paper and electronic copies of all documents and tangible things concerning HES' products and processes, including those currently being held and possessed by his counsel under the terms of the Agreed Order signed January 31, 2006, and including but not limited to the following:  HES documents delivered to anyone; and |
| **V(1)(c)** | **H(1)(e)(ii)** |
| McVay shall, within 10 days of the date of this Award, certify by sworn statement that neither he nor anyone with access to the "hytech?" email address possess or control any electronic or electronic copies of documents or things currently held by McVay's counsel; | Order that McVay shall, within five (5) days of complying with the above Paragraph (c): certify by sworn statement that neither he nor anyone with access to the "hytech?" address possess or control any electronic or electronic copies of the documents and things being held and possessed by his counsel under terms of the January 31, 2006, Agreed Order; |
| **V(1)(d)** | **H(1)(e)(iii)** |
| McVay shall, within 10 days of the date of this Award, certify by sworn statement that no electronic or other copies of any documents or things received at the "hytech?" address from McVay that concern HES products, services or processes have been provided to any third party or that all such copies have been returned to HES; and | Order that McVay shall, within five (5) days of complying with the above Paragraph (c): certify by sworn statement that no electronic or other copies of any documents or things received at the "hytech?" address from McVay that concern HES' products or processes have been provided to any third party or that all such copies have been returned to HES; |
| **V(1)(e)** | **H(1)(e)(iv)** |
| McVay shall, within 10 days of the date of this Award, certify by sworn statement that he has not delivered to anyone outside of HES, other than those with access to the "hytech?" address or James Castaneda, any paper or electronic copies of any version of any documents or records relating to HES products, services or processes. | Order that McVay shall, within five (5) days of complying with the above Paragraph (c): certify by sworn statement that he has not delivered to anyone outside of HES, other than those with access to the "hytech?" address, any paper or electronic copies of any version of any documents or records relating to HES' products or processes, including those being held and possessed by his counsel under terms of the January 31, 2006, Agreed Order and those sent to the "hytech?" address; and |
| **V(1)(b)** | **H(1)(d)** |
| McVay and those acting in concert with him are ordered to return within 10 days (to the extent not already returned) all paper and electronic copies of all documents and tangible things concerning HES products and services, including but not limited to any such paper or electronic copies delivered by McVay to any third party; | Order that McVay (and those acting in concert with him) return to HES through its attorneys, all paper and electronic copies of all documents and tangible things concerning HES' products and processes that were delivered by McVay to any third party, including to anyone with access to the "hytech?" address and any copies that were forwarded from the "hytech?" address to others; |

*Bayless*, 964 S.W.2d 920, 921 (Tex. 1998). These include such things as lost profits, or cost of delay in performance. *See Interceramic, Inc. v. South Orient R.R.*, 999 S.W.2d 920, 928 (Tex. App.--Texarkana, pet. denied)(lost profits); *see also Ryan v. Thurmond*, 481 S.W.2d 199, 206 (Tex. App.--Corpus Christi 1972, writ ref'd n.r.e.)(cost of delay expressed as loss of fair rental value). Neither of these would be applicable here, as McVay's performance or non-performance did not impact Claimant's business, sales, or productivity. The simple truth is Claimant did not lose any business, did not lose any credit or goodwill, and never even lost use of the information it claims McVay failed to return. Hence, there are no damages for Claimant to recover here.

The types of things for which Claimant seeks recovery in this suit are not "damages", whether direct, actual or consequential. Claimant has not been "damaged" in any conventional sense, but rather wishes to characterize all of its expenses in this litigation as damages. None of these are recoverable as damages, however.

No evidence was presented, or logic substantiates, a claim for $1,200 in printing and paper costs as a breach of contract damage claim. The basis for Claimant's breach of contract cause of action is McVay's alleged refusal to return Claimant-related items. The printing and paper costs is not compensation for damage sustained. No evidence exists printing the items is a breach of any contract or even a policy promulgated by Claimant. The printing even occurred prior to any alleged breach.

A. <u>**Expenses and Expert Fees Are Not Damages and Are Not Recoverable**</u>

While costs of court are sometimes recoverable by a successful party in litigation,

Respondent's Response to Claimant's Post-Hearing Brief
in Support of Its Claims of Breach of Contract
R:\1\1072\60673\SubPldgs\RespPostHrgBrief.doc                                    page 20

HESAPP-33

ordinary expenses incurred by a party in prosecuting or defending a lawsuit cannot be recovered *either* as damages or as court costs in the absence of statutory provisions or equity. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Systems, Inc.*, 997 S.W.2d 803 (Tex. App.--Dallas 1999, no pet.)(citing *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 626 (Tex. App.--Dallas 1987, writ denied)); *Eberts v. Businesspeople Personnel Services, Inc.*, 620 S.W.2d 861, 863 (Tex. Civ. App.--1981, no writ)(expenses of litigation are not recoverable as damages unless expressly provided by statute or contract); *see also Hammonds v. Hammonds*, 158 Tex. 516, 313 S.W.2d 603, 605 (1958). Notably, the *Eberts* court held an award of expenses, including attorney's fees and loss of time by employees and officers, was improper. This rule against recovery of litigation expenses has been expressly held to prohibit the recovery of a litigant's lost time. *Phillips v. Latham*, 523 S.W.2d 19, 27 (Tex. Civ. App.--Dallas 1975, writ ref'd n. r. e.). Therefore, Claimant's request for its employee's time is not recoverable.

Moreover, Claimant attempts to characterize its expert fees as "damages" or recoverable costs. Texas law is unmistakably clear that such expenses are not recoverable. "[R]egardless of any good cause shown, costs of experts are incidental expenses in preparation for trial and not recoverable." *Richards v. Mena*, 907 S.W.2d 566, 571 (Tex. App.--Corpus Christi 1995, writ dism'd)(citing *Whitley*, 581 S.W.2d at 544). In a recent case, the court held that it was an abuse of discretion for the trial court to award costs for expert witness fees. *JCW Electronics, Inc. v. Garza*, 176 S.W.3d 618 (Tex. App.--Corpus Christi 2005, no pet. h.). Similarly, other courts have repeatedly held

Respondent's Response to Claimant's Post-Hearing Brief
in Support of Its Claims of Breach of Contract                                                                              page 21
R:\1\1072\60673\SubPldgs\RespPostHrgBrief.doc

HESAPP-34

that expert fees--like attorneys' fees--are litigation expenses that are not recoverable. *King v. Acker*, 725 S.W.2d 750 (Tex. App.--Houston [1st Dist.] 1987, no writ)(holding fees of handwriting experts were not recoverable); *see also City of Houston v. Biggers,* 380 S.W.2d 700 (Tex. Civ. App.--Houston 1964, writ ref'd n.r.e.)(holding appraiser expert fees not recoverable).

McVay further objects as, even though such amounts are not recoverable, Claimant even failed to produce documentation of such in discovery.

**B.    Attorneys' Fees Are Not Damages**

Claimant is also improperly attempting to recover attorneys' fees as a part of its damages, which is not allowed under Texas law. Texas law is abundantly clear on this point: attorney's fees incurred in prosecuting a suit for or defending against a wrong are not ordinarily recoverable as actual damages. *Melson v. Stemma Exploration and Production Co.*, 801 S.W.2d 601 (Tex. App.--Dallas 1990, no writ)(holding that party was not entitled to recover attorneys' fees as damages as a matter of law); *see G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Co.*, 177 S.W.3d 537 (Tex. App.--Dallas 2005, no pet. h.)(holding that ordinarily, "attorney's fees cannot be recovered as damages."); *Houghton v. Wholesale Elec. Supply,* 435 S.W.2d 216, 220 (Tex. Civ. App.--Waco 1968, writ ref'd n.r.e.); *Qwest Comm'ns Int'l, Inc. v. A T & T Corp.,* 114 S.W.3d 15, 32-33 (Tex. App.--Austin 2003), *rev'd in part on other grounds,* 167 S.W.3d 324 (Tex. 2005)(per curiam).

Only when permitted by statute or contract, and under very limited exceptions to

Respondent's Response to Claimant's Post-Hearing Brief
in Support of Its Claims of Breach of Contract
R:\1\1072\60673\SubPldgs\RespPostHrgBrief.doc                                                                                   page 22

HESAPP-35